# United States Court of Appeals
## For the First Circuit

No. 06-1881

TERESA TORRES-MARTÍNEZ; ISMAEL MORALES-MARRERO;
CONJUGAL PARTNERSHIP MORALES-TORRES,
Plaintiffs, Appellants,

v.

PUERTO RICO DEPARTMENT OF CORRECTIONS; MIGUEL PEREIRA, as
Administrator of the Puerto Rico Department of Corrections;
JAIME LÓPEZ-MARTÍNEZ; LOURDES ARCE; ELVIN ALICEA-IRIZARRY,
Defendants, Appellees,

JOHN DOE; JANE DOE,
Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jaime Pieras, Jr., U.S. Senior District Judge]

Before

Torruella and Lynch, Circuit Judges,
and DiClerico, Jr.* District Judge.

Rafael G. Martínez-Géigel, with whom Emilio E. Solé-De la Paz,
was on brief, for appellants.
Salvador J. Antonetti-Stutts, Solicitor General, with whom
Mariana Negrón-Vargas, Deputy Solicitor General, Maite D. Oronoz-
Rodríguez, Deputy Solicitor General, and Susana I. Peñagarícano-
Brown, Assistant Solicitor General, were on brief, for appellees.

April 24, 2007

* Of the District of New Hampshire, sitting by designation.

**TORRUELLA**, **Circuit Judge**.    Teresa Torres-Martínez ("Torres") sued Miguel Pereira (Administrator of the Puerto Rico Department of Corrections, "Pereira"), Jaime López (Regional Director of the Puerto Rico Department of Corrections, "López") and other Puerto Rico Department of Corrections ("PRDOC") personnel in their personal and official capacities (collectively, the "Defendants") for political discrimination and violations of her Fourteenth Amendment due process rights.  She also asserted various state-law claims.  The district court granted summary judgment to Defendants on all claims.  Torres now appeals the entry of summary judgment on her political discrimination and Fourteenth Amendment claims against Defendants in their personal capacities.  After careful consideration, we affirm.

## I. Background

Torres is a member of the New Progressive Party.  She began working for the Department of Corrections in January 1987 as a Penal Records Technician.  In 1992, Torres was appointed Director of the Penal Records Division at the Ponce Correctional Complex at a salary of $1,145 per month.  In 1994, Torres was promoted to Head of Personnel/Human Resources Coordinator, a "trust" position in the Puerto Rico government,[1] at a salary of $2,065 per month.  In 2000,

---

[1]  A "trust" position is a job filled by political appointment in which the holder of the job serves at the discretion of the elected government. See P.R. Laws Ann. tit. 3, §§ 1349-1350 (2000) (repealed 2004).

the job classifications in PRDOC were reorganized, and Torres was reclassified as a "Human Resources Supervisor." Torres appealed the reclassification, and her title was restored to "Human Resources Coordinator." In November 2000, the Popular Democratic Party defeated the New Progressive Party in the gubernatorial elections in Puerto Rico and took control of the government. With the change in administration, Torres was dismissed from her trust position and was reinstated as a career employee in the Ponce division of PRDOC.[2] López was her new supervisor. Torres's career position was reclassified as a "Human Resources Coordinator," and she received a salary increase to $2,256 per month. According to Torres's job description, the Human Resources Coordinator:

> performs executive level management work of great responsibility and complexity including planning, coordinating, directing, and supervising a division of the Human Resources Office or a program or activities that are highly complex and specialized and require the application of broad understanding of the field of human resources. The employee may act as technical or administrative assistant to the Director of Human Resources in comparable areas or functions in the Corrections Administration or may be in charge of supervising personnel transactions for a region. He or she receives general instructions from a superior and may supervise

---

[2] Under Puerto Rico law at the time that Torres alleges discrimination occurred, a career employee who was chosen to fill a trust position had an absolute right to return to their career position at the end of their term at the same salary and with the same benefits they enjoyed before, and any benefits that may have been awarded to the civil service position subsequently. P.R. Laws Ann. tit. 3, § 1350(a) (2000) (repealed 2004).

other personnel.  The employee has discretion to develop and execute the assigned tasks and uses his or her judgment and criteria to perform assigned work.

The job description also included twenty "work examples," indicating that a Human Resources Coordinator "[i]nterviews, recommends, and selects personnel to be hired in his or her division" and "[p]repares various complex letters and reports related to the activities carried out in his or her division." Torres claims that between 2000 and 2004, a number of her official duties were performed by López and some of her co-workers.  In particular, Torres claims that she no longer "[made] request[s] for personnel needs," "wr[ote] relocation or transfer letters," "wr[ote] requests [for] merit steps," or "[gave] orientation to new employees."  Torres conceded that these functions are not exclusively assigned to her job, and that López could have performed some of these functions in his job.  However, Torres claims that she was "left without duties," and resorted to performing clerical work.

Torres filed suit against Defendants in the United States District Court for the District of Puerto Rico on October 25, 2004. Defendants filed a motion for summary judgment on February 10, 2006, arguing that Torres had failed to make out a case of political discrimination or due process violations, and that in any

case, they were entitled to qualified immunity.  The district court granted summary judgment to Defendants on April 3, 2006.[3]

## II. **Discussion**

Torres appeals the district court's grant of summary judgment on her political discrimination and due process claims.[4] We review a grant of summary judgment "de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor."  Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002). Federal Rule of Civil Procedure 56 provides that summary judgment may be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case."  Calero-Cerezo v. United States DOJ, 355 F.3d 6, 19 (1st Cir. 2004).  Furthermore, "[a]s to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic

---

[3]  We do not reach the immunity issues because the district court correctly awarded summary judgment to the defendants on the First Amendment claim, and the Due Process claim fails to state a claim at all.

[4]  Torres also argues that if either of these claims is reinstated, her supplemental state-law claims should also be reinstated.

dispute." <u>McCarthy</u> v. <u>Northwest Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995).

## A. Political Discrimination

Employment decisions with respect to civil servants in "career" positions may violate the First and Fourteenth Amendments if they are motivated by an employee's "exercise of constitutionally protected First Amendment freedoms," such as membership in or activism on behalf of a political party. <u>Mt. Healthy City Sch. Dist. Bd. of Educ.</u> v. <u>Doyle</u>, 429 U.S. 274, 283-84 (1977). To establish a prima facie case of political discrimination, a plaintiff must "show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' -- or to put it in other words, that it was a 'motivating factor'" in an adverse employment decision. <u>Id.</u> at 287. In order to be redressable, an alleged adverse employment decision must result "in conditions 'unreasonably inferior' to the norm for that position." <u>Rosario-Urdaz</u> v. <u>Velazco</u>, 433 F.3d 174, 178 (1st Cir. 2006). The plaintiff bears the burden of persuasion on the prima facie case. <u>Peguero-Moronta</u> v. <u>Santiago</u>, 464 F.3d 29, 45 (1st Cir. 2006). Once a plaintiff has made out a prima facie case of political discrimination, the burden then shifts to the state to show "by a preponderance of the evidence that it would have reached the same decision as to [plaintiff's employment] even

in the absence of the protected conduct." Mt. Healthy, 429 U.S. at 287.

Torres has not established a prima facie case of political discrimination because the evidence she submitted fails to show that she suffered an "adverse employment decision." We begin by noting that throughout the period during which Torres alleges she was subject to political discrimination, Torres maintained her position, the same or a substantially similar title, and her salary. In fact, Torres received a salary increase that was awarded to all career employees. Thus, Torres's claim is not based on her termination or any loss of benefits.

Torres claims instead that she was subject to a more "subtle" form of discrimination in that Defendants completely deprived her of any work duties. See, e.g., Rodríguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 40 (1st Cir. 1993) (finding that plaintiff had made out a prima facie case of political discrimination where "since his reassignment, plaintiff only has been assigned clerical tasks which take ten minutes a day to perform"). However, Torres provides almost no evidence to support this allegation, and many of her own statements contradict it. In Torres's own deposition, she claimed that López stripped her of only four of over twenty-seven duties. The evidence and depositions that Torres submitted in connection with her Opposition to Defendant's Motion for Summary Judgment add little more to her

claims.  Gerardina Rosario Borrero, a secretary in Torres's office, stated that López began conducting job candidate interviews.  However, Rosario Borrero admitted that this was within the purview of López's job description, and stated only that she felt that López "should make [Torres] aware [of the interviews] because she is the human resources coordinator."  Rosario Borrero also added that López was supposed to ask Torres for copies of employee evaluations in writing, but that instead he would often verbally ask the employee's supervisor for the evaluation.  Another employee, Luis A. Blasini Rodríguez, indicated that he had heard rumors that Torres was not properly introduced at meetings, that Torres was no longer participating in "new appointments," and that the human resources office generally was no longer copied on salary change reports.  Carmen M. Martínez Bernard stated only that Torres would assist her with her work when Torres did not have her own work to do.  Finally, Gilda M. Santiago Franceschi stated that she believed that López was hiring employees without Torres's participation.  Notably, Torres does not claim that any of the duties of which she was allegedly deprived were exclusive to her position,[5] and she admits that all of these duties were part of López's job description as well.

---

[5]  In fact, Torres explicitly stated in her brief before this court that "Plaintiff agrees that the duties taken away from her could be performed by, and fell within the authority of, other employees, including that of defendant-appellee [López]."  Appellant's Br. at 18.

Thus, making all possible inferences in favor of Torres, the most that she has shown is that her boss exercised his prerogative to perform three or four duties which he shared with her. This is not a case where Torres states that her duties have been "substantially narrowed." Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1219 (1st Cir. 1989) (en banc). Nor does Torres claim that "all [her] work duties had been assigned to others" for a substantial period of time. Díaz-Gandía v. Dapena-Thompson, 90 F.3d 609, 615 (1st Cir. 1996) (finding that such a claim might constitute an adverse employment decision for the purposes of the Veterans Reemployment Rights Act of 1968) (emphasis in original); see also Acevedo-Luis v. Pagán, 478 F.3d 35 (1st Cir. 2007) (noting plaintiff's allegations that he was subject to an adverse employment decision because "he was assigned no substantive tasks, had no one to supervise, was given no office space, and had only a few menial duties" for three and a half years). Rather, López's decision to exercise more of his duties left Torres with most of her original job functions and perhaps an occasional spell of free time. These perceived slights and alleged alterations in duties are not enough to demonstrate that Torres's working conditions were "substantially inferior" to those she enjoyed before the alleged political discrimination. See Rosario-Urdaz v. Velazco, 433 F.3d 174, 179 (1st Cir. 2006) (finding no adverse employment decision where an employee claimed she was deprived of a few employment

duties). Because Torres did not suffer a cognizable "adverse employment decision," the district court was correct to grant Defendants summary judgment on the political discrimination claim.

## B. Due Process Violation

The Fourteenth Amendment provides that no state shall "deprive any person of . . . property, without due process of law." Torres does not claim to have been deprived of state employment, her title, or her salary; she claims only to have been deprived of duties pertaining to her position. Thus, "[t]he threshold question we must first address is whether [Torres] had a property interest" in her job duties. Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 155 (1st Cir. 2006). We look to "an independent source such as state law" to determine whether Torres had such an interest. Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000) (internal quotation marks omitted) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)); see also Duriex-Gauthier v. López-Nieves, 274 F.3d 4, 11 (1st Cir. 2001) ("The due process claim turns on whether Duriex-Gauthier had a property interest in his job, which is a question of Puerto Rican law."). The Puerto Rico Supreme Court has said that public employees have no property interest in their job duties. Consejo de Educación Superior de la Universidad de P.R. v. Rosselló González, 137 P.R. Dec. 83, 110 (1994); see also Rosado de Vélez v. Zayas, 328 F. Supp. 2d 202, 212 (D.P.R. 2004) ("[U]nder Puerto Rico law, public employees have a

-10-

property interest in their continued employment, not in the functions they perform."); accord Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005). Therefore, in allegedly taking away some of Torres's job duties, Defendants have not deprived Torres of any property interest. As such, plaintiffs have failed to state a claim of denial of due process. See Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1176 (1st Cir. 1988).

### III. Conclusion

For the reasons stated above, we affirm the judgment of the district court.

**Affirmed**.